UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAULINA KOZLOWSKI, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 18 C 147 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| GREENRIDGE FARM, INC. and MICHAEL SHANNON, | ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

Paulina Kozlowski sued her former employer, Greenridge Farm, Inc., and her former supervisor at Greenridge, Michael Shannon, alleging that Greenridge violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and that both defendants violated the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, when they demoted and then terminated her after learning she was pregnant. Doc. 1. Greenridge counterclaimed, alleging that Kozlowski unlawfully defamed it and tortiously interfered with its business when she told its customers that she had been fired because she was pregnant. Doc. 21. Shannon now moves under Civil Rule 12(b)(6) to dismiss Kozlowski's claims against him, Doc. 23, while Kozlowski moves under Rule 12(b)(6) to dismiss Greenridge's counterclaim against her, Doc. 31. Shannon's motion is granted and Kozlowski's is denied.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative pleading's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the [pleading], documents that are critical to the [pleading] and referred

1

to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the nonmovant's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to the nonmovant as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at this stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010). Given these principles, the court rejects Kozlowski's argument, which she advances to support dismissal of Greenridge's counterclaim, that Greenridge's answer to her complaint contradicts certain allegations in its counterclaim, Doc. 33 at 3-4, as the argument effectively asks the court to draw inferences against Greenridge as the nonmovant.

A.  **Kozlowski's Complaint**

Beginning in September 2009, Kozlowski worked in sales for Greenridge, a meat distributor. Doc. 1 at ¶ 9. Kozlowski learned that she was pregnant on July 21, 2016, and informed Shannon, her supervisor, two weeks later. *Id*. at ¶¶ 11-12. On August 24, Shannon met with Kozlowski to let her know that he was reassigning her to an "inside sales" position. *Id*. at ¶¶ 14-15. Her annual salary would be reduced from $78,000 to $40,000, and her existing customers reallocated to other sales personnel. *Id*. at ¶ 15. Kozlowski objected that she was being demoted because of her pregnancy; Shannon responded that the decision was final. *Id*. at ¶ 16. Kozlowski hired an attorney, who sent a letter to Shannon asserting that she had been unlawfully demoted. *Id*. at ¶ 17.

On August 26, Kozlowski discovered that the password she used to log-in to Greenridge's email system had been changed, preventing her access. *Id*. at ¶ 18. Kozlowski

reported the issue to Shannon, who told her to "go home" and "not do any work until Greenridge's attorney responds to your lawyer." *Id*. at ¶ 19. On September 7, Kozlowski received a letter from Greenridge stating that she was being terminated because she had not returned to work since August 26. *Id*. at ¶ 23. On September 12, Kozlowski traveled to Greenridge's facility to return her company car, laptop, and uniforms. *Id*. at ¶ 24. Later that day, she received a letter threatening her with a defamation suit. *Ibid*.

      B.      **Greenridge's Counterclaim**

Greenridge's counterclaim disputes material portions of Kozlowski's account of the events leading up to her termination. It alleges that Kozlowski first met with Shannon on June 15, 2016 to discuss an "action plan" to put one of her accounts "back on track." Doc. 21 at ¶ 7. Kozlowski and Shannon met a second time on July 21, with Shannon telling Kozlowski that Greenridge was planning to restructure the sales department and that she would be responsible for new accounts. *Id*. at ¶ 8. Shannon promised that Kozlowski's earning potential—including salary, bonus, and commissions—would be higher than her then-current salary. *Ibid*.

When Shannon and Kozlowski again met on August 24, Shannon said that he was putting in place the restructuring plan and that Kozlowski would be transitioning to a position as a "new account specialist." *Id*. at ¶ 10. Shannon acknowledged that Kozlowski would receive a lower base salary, but noted that she would receive a $200 bonus for each new store she opened and a commission on all new accounts. *Ibid*. Kozlowski refused the offer, protesting that it was a pregnancy-related demotion—which Shannon disputed—and stating that she would "rather sit at home than work for this money." *Id*. at ¶¶ 11-13. The next day, Kozlowski's attorney told Greenridge that she would return to work, but only in her previous position. *Id*. at ¶ 14. From August 24 through at least September 14, Kozlowski told Greenridge's customers that she had

3

been fired because she was pregnant. *Id*. at ¶ 17. Greenridge alleges that Kozlowski knew that charge to be untrue. *Id*. at ¶¶ 17-19.

## Discussion

I.  **Kozlowski's Claims Against Shannon**

Kozlowski's complaint has two counts, both arising under Title VII and the IHRA as to Greenridge and only under the IHRA as to Shannon. Count I alleges that Greenridge and Shannon unlawfully demoted and then terminated Kozlowski because she was pregnant. Doc. 1 at ¶¶ 26-42. Count II alleges that Greenridge and Shannon retaliated against Kozlowski by first telling her not to return to work and then terminating her after she complained that her demotion was due to her being pregnant. *Id*. at ¶¶ 43-55. As noted, Shannon seeks dismissal of the claims against him.

A.  **IHRA Pregnancy Discrimination Claim**

The IHRA makes it a "civil rights violation … [f]or an *employer* to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth." 775 ILCS 5/2-102(I) (emphasis added). For purposes of this pregnancy discrimination provision, the IHRA defines the term "employer" to "include[] … [a]ny person employing 15 or more employees within Illinois … ." 775 ILCS 5/2-101(B)(1)(a). Kozlowski contends that the definition of "employer" in Section 2-101(B)(1)(b) governs. Doc. 34 at 3. That definition applies "when a complainant alleges [a] civil rights violation due to unlawful discrimination based upon his or her physical or mental disability *unrelated* to ability, pregnancy, or sexual harassment." 775 ILCS 5/2-101(B)(1)(b) (emphasis

4

added). Kozlowski does not allege that she suffered such discrimination, so that definition does not apply here.

Thus, Kozlowski's IHRA pregnancy discrimination claim against Shannon can proceed only if he qualifies as an "employer" under Section 2-101(B)(1)(a). Because Kozlowski alleges that Shannon was her "boss" and himself a Greenridge employee, Doc. 1 at ¶ 12, he does not qualify as her employer. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) (dismissing an IHRA sexual harassment claim because the defendants in question were not the plaintiff's employer) (citing *Pickett v. Sharon Willow Health Care*, 1999 WL 33256273, at *3 (Ill. Human Rights Comm'n May 6, 1999)); *Robertson v. Lofton*, 2013 WL 5796780, at *3 (N.D. Ill. Oct. 25, 2013) (holding that the plaintiff's supervisor "was not a proper defendant" in an IHRA race discrimination claim); *Zayadeen v. Abbott Molecular, Inc.*, 2013 WL 361726, at *5 (N.D. Ill. Jan. 30, 2013) (explaining that it was "appropriate" that, while the plaintiff's claims against the company that employed him were brought under Title VII, the IHRA, and 42 U.S.C. § 1981, his claims against his former supervisor were "brought only under § 1981 … , as § 1981 provides for individual liability while Title VII and the IHRA do not") (citing cases). Kozlowski's pregnancy discrimination claim against Shannon accordingly is dismissed.

In pressing the opposite result, Kozlowski relies on Title VII case law establishing a "*de facto* employer," "indirect employer," or "joint employer" test for determining whether a "putative defendant is so extensively involved with the plaintiff's day to day employment that the putative defendant is the 'real' employer for all intents and purposes." Doc. 34 at 3-5. That case law is inapposite. Given that Kozlowski alleges only that Shannon was her supervisor and himself a Greenridge employee, not her *de facto*, joint, or indirect employer, Shannon cannot

qualify as an "employer" under the IHRA's definition of that term in Section 2-101(B)(1)(a) even if the *de facto*, joint, or indirect employer doctrine applied to that provision.

### B. IHRA Retaliation Claim

Kozlowski's retaliation claim raises a closer question. The IHRA makes it a "civil rights violation for a *person* … to … [r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, … because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act." 775 ILCS 5/6-101(A) (emphasis added). The IHRA defines the term "person" to "include[] one or more individuals." 775 ILCS 5/1-103(L).

Although the IHRA retaliation provision applies to a "person," not an "employer," the Appellate Court of Illinois has held that in IHRA retaliation cases like this one, "where the action is undertaken by a company official [here, Shannon] in the name of the employer [here, Greenridge], the charge must be against the employer and not against the official personally." *Anderson v. Modern Metal Prods.*, 711 N.E.2d 464, 471 (Ill. App. 1999); *see also Watkins v. Office of State Appellate Defender*, 976 N.E.2d 387, 399 (Ill. App. 2012) (dismissing an IHRA retaliation claim against the Illinois Appellate Defender personally, and noting that, "at least in cases where the individual acted within the scope of his employment," *Modern Metal* "explicitly rejected" the argument that the IHRA provides for "liability against an individual employee … because it prohibits a 'person' from retaliating against another for filing a charge"); *Robinson v. City of Evanston*, 2017 WL 201374, at *5 (N.D. Ill. Jan. 18, 2017) (applying *Modern Metal* and *Watkins* to dismiss an IHRA retaliation claim against two City of Evanston employees).

6

The Supreme Court of Illinois has not weighed in on this issue, so the state appellate court's decisions in *Modern Metal* and *Watkins* are entitled to "great weight." *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) (internal quotation marks omitted). And Seventh Circuit precedent teaches that a federal court "ought to deviate from [the state appellate court's] holdings only when there are persuasive indications that the highest court of the state would decide the case differently." *Ibid.* (internal quotation marks omitted). The decisions cited by Kozlowski provide no such indications.

The first decision, *Dana Tank Container, Inc. v. Human Rights Commission*, 687 N.E.2d 102 (Ill. App. 1997)—aside from not being decided by the state supreme court—was explicitly distinguished in *Modern Metal* because it held that an *employer* with fewer than fifteen employees could be liable under the IHRA retaliation provision, not that a plaintiff's individual *supervisor*, acting within the scope of his employment, could be held liable under that provision. *Id.* at 104 ("A 'person' as defined in the [IHRA] can include an employer with fewer than 15 employees."); *see Modern Metal*, 711 N.E.2d at 471 (noting that *Dana Tank* "pointed out … that a 'person' as defined under the [IHRA] can include an employer with fewer than 15 employees"). The second decision, *Anderson v. Pistner*, 499 N.E.2d 566 (Ill. App. 1986), an appellate court decision that predates both *Watkins* and *Modern Metal*, merely "stated *in dicta* that [the] plaintiff could have brought a claim for retaliation against the individual defendants … under the IHRA." *Robinson*, 2017 WL 201374, at *5 (emphasis added). *Pistner* did not make a *holding* on that particular issue because the plaintiffs there "consciously chose not to pursue" a retaliation claim. 499 N.E.2d at 569.

Granted, the Seventh Circuit has held in a nonprecedential order, *Nieman v. Hale*, 541 F. App'x 693 (7th Cir. 2012), that individuals, and not just employers, may be liable under the

IHRA's retaliation provision. Absent a ruling on the pertinent issue from the state supreme court, an on-point Seventh Circuit decision ordinarily trumps the state appellate court's contrary decisions—at least as far as a federal district court is concerned. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).

But *Nieman*, aside from being non-precedential, arose in a materially distinct factual posture and so does not control here. The defendant there—sued after the plaintiff was not hired for a claims-processing position at an insurance company—was an independent recruiting consultant "retained" by the company "to conduct a search for qualified applicants." 541 F. App'x at 694. Thus, although *Nieman* held that the district court "was wrong in concluding that [the plaintiff] does not state a claim" under the IHRA retaliation provision "simply because [the defendant] is not the employer from whom he sought a job," *id*. at 698, the Seventh Circuit had no occasion to consider the key issue here: whether the provision extends liability to an individual *employee* for actions he allegedly took "in the name of his *employer*," *Modern Metal*, 711 N.E.2d at 471 (emphasis added). As *Nieman* explained, the defendant was the company's "employment agent," not its employee, and so "sat squarely between the company and [the plaintiff]." 541 F. App'x at 698.

Accordingly, because *Nieman* does not require this court to deviate from the rule the Appellate Court of Illinois set forth in *Modern Metal* and reaffirmed in *Watkins*, Kozlowski's IHRA retaliation claim against Shannon is dismissed along with her IHRA pregnancy discrimination claim against him. *See Robinson*, 2017 WL 201374, at *5.

## II. Greenridge's Counterclaim Against Kozlowski

Greenridge's counterclaim against Kozlowski has two counts, both arising under Illinois law. Count I alleges that Kozlowski's telling Greenridge's customers that she had been fired

8

because she was pregnant harmed its reputation and business, and thus was defamatory *per se*. Doc. 21 at ¶¶ 15-21. Count II alleges that the same conduct damaged Greenridge's business relationships with its customers and thus constituted intentional interference with prospective business advantage. *Id.* at ¶¶ 22-28.

"Under Illinois law, a statement is defamatory if it harms the reputation of another, lowering him in the eyes of the community, or if it discourages others from associating with him." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (citing *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996)). "Some statements … expose the subject to such great obloquy that they are actionable without proof of injury. This is defamation *per se*." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013) (citing *Tuite v. Corbitt*, 866 N.E.2d 114 (Ill. 2006)). "'In Illinois, there are five categories of statements that are defamatory *per se*: (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication[.]'" *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007) (quoting *Tuite*, 886 N.E.2d at 121); *see also Dobias v. Oak Park & River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 563 (Ill. App. 2016). "However, a statement that is defamatory *per se* is not actionable if it is reasonably capable of an innocent construction. … Additionally, if a statement is defamatory *per se*, but not subject to an innocent construction, it still may enjoy constitutional protection as an expression of opinion." *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006) (citation omitted); *see also Dobias*, 57 N.E.3d at 563-64.

Greenridge's defamation counterclaim implicates only the third and fourth categories of defamation *per se*. *See Pippen*, 734 F.3d at 613 (noting that "[t]he difference between the two [categories] is subtle"). The key question is thus whether Kozlowski's alleged statements to Greenridge's customers about its reasons for terminating her either (1) imputed to Greenridge "an inability to perform or want of integrity in performing employment duties" or (2) imputed "a lack of ability or … otherwise prejudice [Greenridge] in [its] profession or business." *Muzikowski*, 477 F.3d at 904.

Although Greenridge is a corporation, not an individual, the Seventh Circuit has rejected the proposition that "the standards for proof of defamation are different for corporations than for other plaintiffs," and instead has explained that "[Illinois] cases treat corporate plaintiffs just like individuals." *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269 (7th Cir. 1983) (citing *Halpern v. News-Sun Broad. Co.*, 368 N.E.2d 1062 (Ill. App. 1977)); *see also Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1071 (4th Cir. 1993) (holding, under Virginia law, that "a corporation may be defamed *per se* by statements which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business") (internal quotation marks omitted); *Miller UK Ltd. v. Caterpillar Inc.*, 2015 WL 6407223, at *11 (N.D. Ill. Oct. 21, 2015) ("Although certain forms of defamation do not apply to corporate entities, Illinois defamation law in general protects corporations as well as individuals."); *Levitt v. S.C. Food Serv., Inc.*, 820 F. Supp. 366, 367 (N.D. Ill. 1993) ("Aspersions which undercut a corporation's reputation for discharging its duties with integrity and have the likely effect of harming the business, fall within the ambit of defamation *per se*.") (citing *Am. Pet Motels, Inc. v. Chi. Veterinary Med. Assoc.*, 435 N.E.2d 1297, 1300 (Ill. App. 1982)). Under Illinois law, then, "[a] corporation … can have a reputation for adhering to the moral standards of the community

in which it sells its products and if that reputation is assailed in a fashion likely to harm the corporation seriously the corporation has been libeled." *Brown & Williamson*, 713 F.2d at 269.

Given this legal backdrop, Kozlowski's alleged statements to Greenridge's customers could qualify as defamation *per se*. *Brown & Williamson* helps to illustrate why. That case concerned a television broadcast critical of the tobacco industry. *Id*. at 266. During the broadcast, the defendant (Channel 2's Walter Jacobson) accused the plaintiff, a cigarette manufacturer, of targeting children with specific marketing strategies designed to link cigarettes with independence and self-discovery; the defendant described the plaintiff's strategy as follows: "Go for the youth of America, go get 'em guys. … Hook 'em while they are young, make 'em start now—just think how many cigarettes they'll be smoking when they grow up.'" *Ibid*. (ellipses in original). The Seventh Circuit held that the "broadcast fit[] the fourth category" of defamation *per se*. *Id*. at 267. As the court explained: "Accusing a cigarette company of what many people consider the immoral strategy of enticing children to smoke … is likely to harm the company. It may make it harder for the company to fend off hostile government regulation and may invite rejection of the company's product by angry parents who smoke but may not want their children to do so." *Id*. at 268-69.

The same reasoning applies here. Because pregnancy discrimination "violates federal law, public policy, and commonly accepted morality," Kozlowski's alleged statements compromised Greenridge's reputation for adhering to the community's moral standards. *Levitt*, 820 F. Supp. at 367 ("The simple statement declares that Manchu Wok discharged employees based on their national origin … . Such a statement, published amongst Manchu Wok's peers and accessible to potential managerial employees, impugns the restaurant's method of doing business and denigrates its integrity and lawfulness."); *see also Miller UK*, 2015 WL 6407223, at

11

*12 (holding that statements "suggest[ing] that Caterpillar produces and distributes an unsafe product" constituted defamation *per se* under Illinois law).  Indeed, now more than ever, allegations that a company handled a discrimination complaint poorly or itself discriminated are likely to prejudice that company in its business, particularly when the audience is the business's customers, who risk accusations of complicity if they do not take their accounts elsewhere.

To be sure, depending on the context in which they are made, statements alleging that a company discriminated may be subject to a recognized privilege.  *See Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 881 (Ill. App. 2013) ("Even statements that are defamatory *per se*, however, are not actionable if they are protected by privilege.").  But Kozlowski does not invoke any such privilege, and so has forfeited the point for purposes of the present motion.  *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in [a] response … ."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court.").

Nor are Kozlowski's alleged statements reasonably capable of an innocent construction.  "The so-called 'innocent-construction' rule requires a court to consider the statement in context and to give the words of the statement, and any implications arising from them, their natural and obvious meaning."  *Solaia*, 852 N.E.2d at 839.  "Courts must therefore interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable [listener]."  *Bryson*, 672 N.E.2d at 1217 (citation omitted).  But "[w]hen a defamatory meaning was clearly intended and conveyed," a court should not "strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibellous."  *Ibid.*; *see also Antonacci v. Seyfarth Shaw, LLP*, 39 N.E.3d

225, 235 (Ill. App. 2015) ("[W]hen the defendant clearly intended or unmistakenly conveyed a defamatory meaning, a court should not strain to see an inoffensive gloss on the statement.") (internal quotation marks omitted).

Applying those principles, Kozlowski's alleged statements that Greenridge fired her because she was pregnant would have conveyed to Greenridge's customers exactly that message—that her pregnancy was the basis for her termination. Indeed, it is hard to see what else Kozlowski could have meant, as she is not alleged to have "conditioned" her statement on anything. *Goral v. Kulys*, 21 N.E.3d 64, 78-79 (Ill. App. 2014) (holding that a statement was capable of an innocent construction because the defendant "did not directly state that plaintiff *is* violating state election or property tax law," but instead phrased her accusations in the conditional and noted that "authorities … would ultimately decide whether plaintiff had violated any laws"). Accordingly, absent any apparent innocent construction, Kozlowski's statement must be understood as a statement about why she was fired. *See Bryson*, 672 N.E.2d at 1217 ("When we consider the allegedly defamatory language in context, and give the words and implications their natural and obvious meaning, it is evident that the word 'slut' was intended to describe Bryson's sexual proclivities."); *Dobias*, 57 N.E.3d at 565-66 (holding that the statement that a "teacher [was] rolling around on a bed with a student, when the two of them [were] alone in a hotel room," was not reasonably capable of an innocent construction); *Hadley v. Doe*, 12 N.E.3d 75, 85 (Ill. App. 2014) ("Applying the innocent-construction rule … we determine that the idea intended to be conveyed to the reasonable reader by the words at issue—'Hadley is a Sandusky waiting to be exposed. Check out the view he has of Empire [an elementary school] from his front door'—is that Hadley is a pedophile.").

For substantially the same reasons, Kozlowski's alleged statements do not qualify as protected statements of opinion. "Several considerations aid [this] analysis: whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Solaia*, 852 N.E.2d at 840. Kozlowski's statements are verifiable—after all, in resolving her pregnancy discrimination claim against Greenridge, the court or a jury will determine whether she was, in fact, terminated because she was pregnant. *See Jacobson v. Gimbel*, 986 N.E.2d 1262, 1273 (Ill. App. 2013) ("To determine whether an alleged defamatory statement is protected under the first amendment, or whether it can be reasonably interpreted as stating actual facts, the emphasis is on whether it contains an objectively verifiable assertion."). Kozlowski's statement that Greenridge terminated her because she was pregnant "has a precise and readily understood meaning," given that Greenridge's customers would have taken it as the reason why they would no longer be working with her. *Hadley*, 12 N.E.3d at 87. And it is almost certain that Kozlowski "intended to present a fact (as opposed to an opinion) about" Greenridge's conduct, as she maintains—as demonstrated by the existence of this suit—that her pregnancy was, as a factual matter, the reason for her termination. *Ibid.*; *see also Dobias*, 57 N.E.3d at 567 ("A defendant cannot avoid the defamatory statements he has made merely by inserting his opinion of those facts alongside them. Whatever opinion Tarrant may have expressed about this complained-of conduct, the statements of fact themselves could be readily verifiable as true or false.") (citations omitted). These features of Kozlowski's alleged statements distinguish this case from those where Illinois courts have treated an allegedly defamatory statement as an opinion. *See Solaia*, 852 N.E.2d at 841 (holding that "[t]he phrase 'deeply greedy people' has no precise meaning, and it is not verifiable," and noting that "the context in which that phrase appeared indicates that it may have

14

been judgmental, but it was not factual"); *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 699 (Ill. App. 2002) (holding that a statement in a television commercial that the plaintiff was "cheating the city" was "not made in any specific factual context" because the speaker "did not explain the evidence that she was referring to, nor did she state why she thought [the plaintiff] was cheating the city, how he was cheating the city, or even what she meant by the term 'cheating'"); *Dubinsky v. United Airlines Master Exec. Council*, 708 N.E.2d 441, 451 (Ill. App. 1999) ("Richards' statement that Dubinsky was a 'crook' was not actionable because it was not made in any specific factual context. One cannot rely on an assumption that those heard the statement were completely apprised of all the developments in the [relevant] controversy so as to create a definitive factual context for the use of the word 'crook.'").

As to Greenridge's tortious interference claim, it is plausible to infer that Kozlowski's alleged statements could have prompted customers to take their accounts elsewhere, and thus that the statements "interfered" with Greenridge's "business relationships with its customers." Doc. 21 at ¶ 26. That suffices at the pleading stage to forestall dismissal. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("It is enough to plead a plausible claim, after which 'a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)). Kozlowski argues that Greenridge's tortious interference claim must be dismissed because it rises and falls with Greenridge's defamation *per se* claim—a premise Greenridge seemingly accepts. Doc. 33 at 10 (contending that "alleged conduct that does not establish a viable defamation claim is of no use for a claimant's intentional interference action"); *see also* Doc. 21 at ¶ 26 (alleging that Kozlowski's allegedly defamatory statements also give rise to a tortious interference claim).

15

Because Greenridge's defamation *per se* claim survives dismissal, that argument for dismissing the tortious interference claim necessarily fails.

## Conclusion

Kozlowski's IHRA claims against Shannon are dismissed, and because amendment would be futile, the dismissal is with prejudice. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend … where the amendment would be futile.") (internal quotation marks omitted); *Culver Franchising Sys., Inc. v. Steak N Shake Inc.*, 2016 WL 4158957, at *9 (N.D. Ill. Aug. 5, 2016) (dismissing a complaint with prejudice where "repleading would appear to be futile" given a "fatal flaw in [the plaintiff's] case" that "[could not] be cured by amendment"). Kozlowski's motion to dismiss Greenridge's counterclaims is denied.

June 22, 2018

United States District Judge